IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ZALEIPH WOOTEN, et al., | * | |
| | * | |
| Plaintiffs | * | |
| | * | Civ. No.: MJM-23-2695 |
| v. | * | |
| | * | |
| THE BOPPY COMPANY, LLC, et al., | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Zaleiph Wooten and Tawana Patina Reid (together, "Plaintiffs")[1] filed this civil action against defendants The Boppy Company, LLC ("Boppy"), Artsana S.p.A. d/b/a Artsana Group ("Artsana"), and Walmart, Inc. (collectively, "Defendants"). Currently pending are Boppy's Partial Motion to Dismiss and Artsana's Motion to Dismiss. The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the foregoing reasons, both motions shall be granted.

**I.      BACKGROUND**

Plaintiffs received a Boppy Original Newborn Lounger (the "Lounger") as a gift from their baby gift registry. Compl. ¶ 19. The Lounger is a padded pillow lounger designed for infants. *Id.* ¶ 20. On or around October 8, 2020, Plaintiffs placed their seven-day old son, Z.W., Jr., in the Lounger. *Id.* ¶ 30. Shortly thereafter, Plaintiffs found their son unresponsive in the Lounger. *Id.* ¶

---

[1]      Plaintiffs bring suit both individually and as co-administrators of Z.W., Jr.'s estate. Compl. ¶ 1.

1

31. Plaintiffs took Z.W., Jr. to the hospital where he was pronounced dead as a result of asphyxiation and suffocation in the Lounger. *Id.* ¶¶ 33–34.

Plaintiffs allege that Defendants were involved in the manufacture, design, marketing, and sale of the Lounger. *Id.* ¶ 16. On September 23, 2021, the Lounger was recalled due to reports of infants suffocating while using the product. *Id.* ¶ 25. On June 6, 2023, Boppy and the Consumer Product Safety Commission ("CPSC") publicly urged consumers to stop using the Lounger due to infant deaths. *Id.* ¶ 26. Plaintiffs allege that Defendants knew or should have known of the serious risk of injury or death posed by the Lounger before it was recalled. *Id.* ¶ 27.

On October 5, 2023, Plaintiffs filed a Complaint asserting nine counts against Defendants: Negligence (Count I), Fraudulent Concealment (Count II), Strict Liability – Defective Manufacture and Design (Count III), Strict Liability – Failure to Warn (Count IV), Negligent Misrepresentation (Count V), Common Law Fraud (Count VI), Breach of Express and Implied Warranties (Count VII), Violation of Consumer Protection Law (Count VIII), and Gross Negligence (Count IX), as well as a wrongful death claim and a survival action on behalf of Z.W., Jr.'s estate. ECF 1. Each count includes a claim for compensatory damages and punitive damages.

Boppy filed a Partial Motion to Dismiss on January 5, 2024, seeking to dismiss Counts II, VI, and VIII, along with Plaintiffs' prayer for punitive damages, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 17. Plaintiffs filed an opposition to the motion, ECF 18, and Boppy filed a reply in support, ECF 19.

On April 29, 2024, Artsana filed a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), or alternatively to dismiss Counts II, VI, and VIII and Plaintiffs' prayer for punitive damages under Rule 12(b)(6). ECF 20. Plaintiffs filed an opposition to the motion, ECF 23, and Artsana filed a reply in support, ECF 24.

2

## II. ARTSANA'S MOTION TO DISMISS

In its Motion to Dismiss, Artsana seeks dismissal of all claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Artsana argues that the Court's exercise of personal jurisdiction over it would violate due process because it never purposefully availed itself of doing business in Maryland and the injuries alleged do not arise out of its activities in the state. *Id.* at 8–11. In opposition, Plaintiffs argue that Artsana purposefully availed itself of the laws of Maryland by doing substantial business in the United States and that it should further be imputed with the contacts of its subsidiary, Boppy. ECF 23 at 7–8, 10.

### A. Standard of Review

A federal court may exercise personal jurisdiction over a defendant in accordance with the law of the forum state, *see* Fed. R. Civ. P. 4(k)(1), and the due process clause of the Fourteenth Amendment to the U.S. Constitution, *see Ford Motor Co. v. Mont. Eighth Dist. Ct.*, 592 U.S. 351 (2021). For a district court to exercise personal jurisdiction over a defendant, "(1) [the] state's long-arm statute must authorize the exercise of jurisdiction under the facts presented, and (2) the statutory assertion of personal jurisdiction must comply with due process." *Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *2 (4th Cir. Jan. 6, 2022) (citing *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)). It is well accepted that Maryland's long-arm statute is coextensive with the due process clause. *See, e.g.*, *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). "The statutory and constitutional requirements thus 'ultimately collapse into virtually the same analysis.'" *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 333 (D. Md. 2022) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993)).

"Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.'" *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see also Grayson*, 816 F.3d at 267 (same).

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. In its discretion, a court may also permit discovery as to the limited issue of jurisdiction. *See Mylan Labs.*, 2 F.3d at 64. However, neither discovery nor an evidentiary hearing is required to resolve a motion under Rule 12(b)(2). *See generally* Wright & Miller, Fed. Prac. & Proc. § 1351 (4th ed. 2019).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction, assuming they are true, make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.*

4

### B. Personal Jurisdiction Over Artsana

There are two forms of personal jurisdiction: general and specific. *E.g.*, *Ford Motor Co.*, 592 U.S. at 358. Plaintiffs concede that the Court lacks general jurisdiction of Artsana. A district court has general jurisdiction over a defendant when his contacts with the forum state are so "continuous and systematic" as to render the defendant "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 918–19 (2011). A corporation is "at home" in the forum state where it is incorporated, and where its principal place of business is located. *Ford Motor Co.*, 592 U.S. at 358–59 (citation omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746, 761, n.19 (2014) (leaving open the door that a business's operations in a forum state where it is neither incorporated nor headquartered may nonetheless be so "substantial and of such a nature as to render the corporation at home"). Artsana is incorporated in Italy, maintains its headquarters in Italy, and has no office or employees in Maryland. ECF 20-2, ¶¶ 6–8, ¶¶ 11–12. Therefore, there is no general jurisdiction over Artsana in Maryland.

The issue is whether the Court has specific jurisdiction over Artsana in the context of this case. A defendant subject to specific jurisdiction "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 358 (cleaned up). Additionally, for specific jurisdiction over a defendant to be appropriate, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Farrar v. McFarlane Aviation, Inc.*, 823 F. App'x 161, 164 (4th Cir. 2020) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). The heart of the analysis is whether the defendant has sufficient contacts with the forum such that the exercise of personal jurisdiction "is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional

5

notions of fair play and substantial justice.'" *Ford Motor Co.*, 592 U.S. at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

The U.S. Court of Appeals for the Fourth Circuit has reduced the "due process requirements for asserting specific personal jurisdiction" to a three-prong test, considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings*, 963 F.3d at 351–52 (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). For the first prong, the Fourth Circuit has put forward several non-exhaustive factors for the district courts to consider, including "whether the defendant maintained offices or agents in the State; . . . reached into the State to solicit or initiate business; or deliberately engaged in significant or long-term business activities in the State;" among other factors.[2] *Id.* at 352. The second prong concerns the extent to which the defendant's contacts with the forum state "form the basis of the suit." *Id.* at 354 (citing *Consulting Eng'rs*, 561 F.3d at 278–79). "Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *Id.* (cleaned up).

Plaintiff fails to establish that Artsana had sufficient contacts with Maryland to justify this Court's exercise of specific jurisdiction. Artsana has little in the way of a presence in Maryland. It has no offices or employees in the state, nor does it have a registered agent in Maryland for service

---

[2] Other factors identified by the Fourth Circuit include "whether the defendant maintained property in the State; . . . whether a choice of law clause selects the law of the State; . . . whether the defendant made in-person contact with a resident of the State regarding the business relationship; . . . whether the relevant contracts required performance of duties in the State; and . . . the nature, quality, and extent of the parties' communications about the business being transacted." *Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018) (citing *Consulting Eng'rs*, 561 F.3d at 278).

6

of process. ECF 20-2, ¶¶ 9–12. Plaintiff presents evidence that Artsana conducts business in the United States and the "Americas"[3] generally, but not that it specifically engages in business in the State of Maryland. *See* ECFs 23-2, 23-4, 23-6, & 23-7. Moreover, Artsana has provided a declaration establishing that it did not design, manufacture, market, or sell the Lounger, in Maryland or elsewhere. *Id.* ¶ 13. *Compare Ford*, 592 U.S. at 365 ("Ford had advertised, sold, and serviced those two car models in both States for many years. . . . In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States."), *with Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723 (D. Md. 2000) ("Neither SBC nor BAC has employees or offices in Maryland, owns property in Maryland, directly conducts business in Maryland, sells goods or provides services in Maryland, or is registered or licensed in Maryland.") (cleaned up).[4]

Exhibits attached to Plaintiff's opposition indicate that Artsana purchased Boppy, the apparent manufacturer or marketer of the Lounger, in 2008 and, with Boppy, initiated a recall of the Lounger in the United States. *See* ECF 23-4 at 3; ECF 23-6 at 3. Artsana's ownership of Boppy does not automatically imbue it with Boppy's contacts in Maryland.

Under Maryland law, a subsidiary's contacts in a forum may only be attributed to the foreign parent "if the parent exerts considerable control over the activities of the subsidiary." *Mylan Labs.*, 2 F.3d at 61. The crux of the analysis is "whether significant

---

[3]   Artsana and its subsidiaries operate in the U.S., Mexico, Argentina, and Brazil. *See* ECF 23-4 at 5, 8–9.

[4]   For this reason, two cases cited by Plaintiffs—*Hart v. Bed Bath & Beyond*, 48 F. Supp. 3d 837, 840 (D. Md. 2014), and *Valichka v. Kettler Int'l Inc.*, Civ. No. RDB-13-0618, 2014 WL 2887857, at *4 (D. Md. June 24, 2014)—are inapplicable here. In those cases, the Court exercised personal jurisdiction over foreign manufacturers in connection with injuries caused by products they manufactured or sold. *See Hart*, 48 F. Supp. 3d at 840; *Valichka*, 2014 WL 2887857, at *4.

decisions of the subsidiary must be approved by the parent." *Id.* Other factors include: (1) whether the parent and subsidiary "maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings"; and (2) whether the subsidiary has "some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding." *Id.* (citations omitted).

Plaintiffs' burden is indeed considerable, and they have failed to carry it. *See Nat'l Fire & Marine Ins. Co. v. Advanced Lighting Techs. LLC*, Civ. No. JRR-22-2723, 2023 WL 6142988, at *4 (D. Md. Sept. 20, 2023) (declining to impute contacts to parent company even where parent and subsidiary filed joint tax returns and shared directors); *Newman*, 125 F. Supp. 2d at 723 (declining to impute contacts to parent company even where parent could appoint majority of subsidiary's board and control major decisions); *see also Rheumatology Nurses Soc'y, Inc. v. Phoenix Grp. Holdings, LLC*, Civ. No. CCB-08-1675, 2009 WL 249233, at *3 (D. Md. Jan. 8, 2009) ("Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil, and courts do so only where necessary to prevent fraud or to enforce a paramount equity.") (citation omitted). Plaintiffs do not show that Artsana controlled Boppy's activities or that the subsidiary could not act independently. The only evidence they put forth on the subject shows that Boppy was purchased by Artsana in 2008. ECF 23-4 at 6; ECF 23-5 at 2; ECF 23-6 at 3. Because the mere existence of a parent/subsidiary relationship is insufficient to impute contacts from one to the other, the Court declines to impute Boppy's contacts to Artsana.

Finally, Plaintiff's claims do not arise out of Artsana's actions in Maryland. For a plaintiff's claims to "arise out of a defendant's activities directed at the state[,] there must be an affiliation between the forum and the underlying controversy, principally, *an activity or an occurrence that takes place in the forum State.*" *Wallace*, 2022 WL 61430, at *3 (cleaned up) (emphasis added).

The genesis of the dispute in this case is the design, manufacture, marketing, and sale of the Lounger, which Plaintiffs allege resulted in the death of their son. Artsana did not design, manufacture, market, or sell the Lounger. ECF 20-2, ¶ 13. The only specific acts Plaintiffs attribute to Artsana in their opposition is Artsana's purchase of Boppy in 2008 and its involvement in the recall of the Lounger in 2021, but Plaintiffs' claims do not arise out of these actions by Artsana.

In sum, Artsana lacks the minimum contacts with Maryland necessary for this Court to exercise specific jurisdiction over the defendant in this matter.[5] Accordingly, the Court finds that exercising specific personal jurisdiction over Artsana would not comport with due process.

### C. Jurisdictional Discovery

Plaintiffs request "jurisdictional discovery pertaining to Artsana's revenue from products sold in the state and its other contacts with the state of Maryland" should the Court find the exercise of personal jurisdiction over Artsana to be inappropriate. ECF 23 at 12.

Although limited discovery is appropriate in some cases, a district court has the discretion to deny jurisdictional discovery where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402–03 (collecting cases). Jurisdictional discovery cannot be used as a "fishing expedition in hopes of discovering some basis of jurisdiction," *Williams v. Romarm S.A.*, 116 F. Supp. 3d 631, 643 (D. Md. 2015) (citation omitted), and "a district court does not abuse its discretion in denying jurisdictional discovery when the additional information sought would not alter [the] analysis of personal jurisdiction," *D2L Ltd. v. Biggs*, Civ. No. CCB-18-2994, 2019 WL 3975656, at *4 (D. Md. Aug. 22, 2019) (cleaned up); *see also Morris v. Mingo Logan Coal LLC*, No. 2:23-CV-00316, 2023 WL 8260277, at *5 (S.D.W.

---

[5] Because Artsana lacks minimum contacts with Maryland, the Court need not consider the third prong of the test, i.e., whether the exercise of personal jurisdiction would be constitutionally reasonable. *See Burger King*, 471 U.S at 477 (citing *Int'l Shoe*, 326 U.S. at 320).

9

Va. Nov. 29, 2023) ("Rule 8 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'") (quoting *Iqbal*, 556 U.S. at 678–79).

Here, Plaintiffs fail to show that jurisdictional discovery would be anything more than a fishing expedition. They request jurisdictional discovery pertaining to Artsana's revenues from products sold in Maryland and other alleged contacts with the forum. ECF 23 at 12. But this information would not establish that Artsana's contacts with Maryland gave rise to the claims at issue in this case, nor would it justify imputing Boppy's contacts to Artsana. Plaintiffs' request for jurisdictional discovery as to Artsana is thus denied.

Artsana's Motion to Dismiss shall be granted. Plaintiffs' claims against Artsana will be dismissed without prejudice.

### III.    BOPPY'S PARTIAL MOTION TO DISMISS

In its Partial Motion to Dismiss pursuant to Rule 12(b)(6), Boppy requests dismissal of Plaintiffs' claims in Counts II, VI, and VIII of the Complaint for fraudulent concealment, common law fraud, and violation of consumer protection law, respectively. Boppy argues that Plaintiffs do not satisfy the heightened pleading standard that applies to claims sounding in fraud and do not adequately plead actual malice, as necessary to sustain their claims for punitive damages. In their opposition, Plaintiffs argue that the Complaint states adequate prima facie claims for fraud and violation of the Maryland Consumer Protection Act ("MCPA"), and a prima facie basis for recovery of punitive damages.

#### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

10

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A claim of fraud is subject to the heightened pleading standard of Rule 9(b). Failure to comply with Rule 9(b) "is treated as a failure to state a claim under Rule 12(b)(6)." *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 822 (D. Md. 2005) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must allege "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010)

(quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). In simpler terms, the plaintiff must sufficiently allege the "who, what, when, where, and how of the alleged fraud." *Wilson*, 525 F.3d at 379 (cleaned up).

### B. Counts II, VI, and VIII

Plaintiffs' claims in Counts II, VI, and VIII each sound in fraud. Count II asserts a claim of fraudulent concealment, Count VI asserts a claim of common law fraud, and Count VIII asserts claims under the MCPA.[6] Each of these counts is asserted against all Defendants.

To prevail on a claim of fraudulent concealment, a plaintiff must show "1) that the defendant owed a duty to the plaintiff to disclose a material fact, 2) that the defendant failed to disclose that fact, 3) that the defendant intended to defraud or deceive the plaintiff, 4) that the plaintiff took action in justifiable reliance on the concealment, and 5) that the plaintiff suffered damages as result of the defendant's concealment." *Hill*, 383 F. Supp. 2d at 820 (internal citations omitted).

---

[6] According to the Complaint, "Defendants engaged in unfair, abusive, or deceptive acts and/or practices that were proscribed by [the MCPA], including the following:

> a. Making false and misleading representations with the capacity, tendency, or effect of deceiving or misleading consumers;
>
> b. Representing that goods have characteristics, uses, or benefits that they do not have;
>
> c. Failing to state a material fact which failure deceives or tends to deceive;
>
> d. Advertising goods with the intent not to sell them as advertised;
>
> e. Deception, fraud, false pretense, false premise, misrepresentation, and knowing concealment, suppression, or omission of a material fact with the intent that the consumer rely on the same in connection with the sale of any consumer good; and
>
> f. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding."

Compl. ¶ 102.

A common law fraud claim in Maryland requires the following: that "1) the defendant made a false representation to the plaintiff, 2) its falsity was either known to the defendant or the representation was made with reckless indifference as to its truth, 3) the misrepresentation was made for the purpose of defrauding the plaintiff, 4) the plaintiff relied on the misrepresentation and had the right to rely upon it, and 5) the plaintiff suffered compensable injury resulting from the misrepresentation." *Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 493 (D. Md. 2009).

The MCPA prohibits any "unfair, abusive, or deceptive trade practice" in the marketing and sale of consumer goods. Md. Code, Com. Law § 13-303. To state a claim under the MCPA, a plaintiff "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d. 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Keen v. LoanCare, LLC*, Civ. No. RDB-22-0149, 2023 WL 7130947, at *3 (D. Md. Oct. 30, 2023) (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)).

Because they sound in fraud, the claims asserted in Counts II, VI, and VIII are held to the heightened pleading standard of Rule 9(b). *See, e.g.*, *Thomas v. Ethicon, Inc.*, Civ. No. GLR-20-3729, 2021 WL 6126300, at *10 (D. Md. Dec. 28, 2021) (applying Rule 9(b) pleading standard to fraudulent concealment and common law fraud claims); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (applying Rule 9(b) pleading standard to MCPA claims). However, recognizing that "facts [related to the allegations] will often be in the sole possession of the defendant" in fraudulent concealment cases, the majority of federal Courts of Appeals, including the Fourth Circuit, have adopted a "relaxed Rule 9(b) standard" in such cases. *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401–02 (4th Cir. 2023) (citing cases). The particularity requirement is not waived,

but a plaintiff alleging fraudulent concealment "may partly rely on information and belief without running afoul of Rule 9(b)." *Id.* (citing *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987)).

Nevertheless, an "undifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b)." *Haley*, 659 F. Supp. 2d at 724 (citing *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000)). A plaintiff fails to satisfy Rule 9(b) where she does not "specify each defendant's participation in the alleged fraud." *Id.* (citing *Adams*, 193 F.R.D. at 250); *see also Corder*, 57 F.4th at 403 ("Even under a relaxed pleading standard, [plaintiffs] had no excuse for neglecting to identify, in the fraud count itself, which individual defendants [committed which specific acts of concealment].") (citation omitted).

In the instant case, Plaintiffs aggregate Defendants' conduct throughout the Complaint, and it is not clear which defendant is accused of which acts. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). In fact, the only allegation made against any single defendant that is not made against the other two defendants is that Boppy initiated a product recall alongside the CPSC. Compl. ¶ 26. The Court finds that Plaintiffs have failed to comply with Rule 9(b)'s particularity requirement. *Compare Juntti v. Prudential-Bache Secs., Inc.*, 993 F.2d 228 (Table), at *2 (4th Cir. 1993) (noting "Defendants, together with agents acting on their behalf or at their direction, engaged in a scheme, practice or course of business to manipulate the market for IBCA stock" as an example of improper aggregation in a complaint) (citation omitted), *with* Compl. ¶ 46 ("The Defendants deliberately concealed these material facts in their representations, intending that the consuming public would rely on them in purchasing and using the Boppy Original Newborn Lounger."). Accordingly, Counts II, VI, and VIII must be dismissed.

### C. Punitive Damages

At the motion to dismiss stage, a plaintiff's claim for punitive damages must contain sufficient factual allegations to establish that "the defendant's conduct was characterized by actual malice." *Luminace Solar Md., LLC v. Tigo Energy, Inc.*, Civ. No. GLR-23-1606, 2024 WL 1283329, at *6 (D. Md. Mar. 26, 2024) (cleaned up). Actual malice is "characterized by evil motive, intent to injure, ill will, or fraud . . . ." *Owens-Ill., Inc. v. Zenobia*, 601 A.2d 633, 653 (Md. 1992).[7] It requires more than the mere "supplying of a defective product or negligence." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 108 (D. Md. 2020) (quoting *Zenobia*, 601 A.2d at 655). To show actual malice in a products liability case, "the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect." *Id.* (quoting *Zenobia*, 601 A.2d at 653).

Here, Plaintiffs fail to allege sufficient facts to support a reasonable inference that Defendants acted with actual malice. The Complaint contains only general allegations that Defendants knew the Lounger was dangerous and could result in death. Such conclusory allegations are insufficient to sustain a claim for punitive damages. *See Luminace*, 2024 WL 1283329, at *7 (cleaned up) ("This Court has granted motions to dismiss punitive damages claims based on conclusory assertions . . . and where the plaintiffs fail to put forth any evidence that a defendant had any knowledge of a product defect when the product left its possession or control.") (cleaned up); *Mendez v. Gen. Motors, LLC*, Civ. No. JMC-22-853, 2022 WL 2333851, at *4 (D. Md. June 28, 2022) ("It is not enough [for an award of punitive damages] for a plaintiff to generally allege that a manufacturer knew of a product defect and distributed the product anyway.") (citation

---

[7] The Maryland Supreme Court has stated that the concept of actual malice "does not translate easily into product liability cases" given how unlikely it is "that a manufacturer or supplier of a defective product would specifically intend to harm a particular consumer." *Id.* at 653–54.

omitted). Indeed, Plaintiffs offer no specific facts to suggest that Boppy acted with actual malice. *Cf. Luminace*, 2024 WL 1283329, at *7–8 (declining to dismiss request for punitive damages at the motion to dismiss stage not because plaintiffs alleged that defendants ignored an unreasonable risk of injury or death, but because plaintiffs attached other complaints as evidence of actual awareness). Thus, Plaintiffs fail to state a plausible claim that Defendants acted with actual malice, and their claims for punitive damages must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Artsana's Motion to Dismiss shall be GRANTED, and Boppy's Partial Motion to Dismiss shall be GRANTED. The claims against Artsana shall be dismissed without prejudice for lack of personal jurisdiction. Additionally, Counts II, VII, and VIII, and all claims for punitive damages shall be dismissed without prejudice.

A separate Order will issue.


  8/14/24                                                    /S/
Date                                              Matthew J. Maddox
                                                  United States District Judge